**Renée E. Rothauge**, OSB #903712
E-mail: renee.rothauge@bullivant.com
**Laura Caldera Taylor**, OSB #993786
E-mail: laura.taylor@bullivant.com
BULLIVANT HOUSER BAILEY PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915
Attorneys for Defendant Hydra Fuel Cell Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **RELION, INC.**, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>**HYDRA FUEL CELL CORPORATION**, a Nevada corporation, and **AMERICAN SECURITY RESOURCES CORPORATION**, a Nevada corporation<br><br>Defendants.<br><br>**HYDRA FUEL CELL CORPORATION**, a Nevada corporation,<br><br>Counter Claimant,<br><br>v.<br><br>**RELION, INC.**, a Washington corporation,<br><br>Counter Defendant. | Civil No.: 3:06-CV-00607 HU<br><br>**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO RELION'S MOTION TO STAY OF MARCH 27, 2008 ORDER PENDING RULING ON MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT [#208]**<br><br>**(REDACTED)** |

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]**
**Page 1**

## INTRODUCTION

While ReliOn has spent two years telling this Court that this case has been about its efforts to prevent Hydra from practicing the invention purportedly disclosed in the '556 Patent, ReliOn has actually been using this Court as a vehicle for its anti-competitive plan to obtain an overly broad construction of its patent, and to shut Hydra down using any means necessary. Although ReliOn's sole claim for relief is for patent infringement, it recently admitted that it has been prosecuting this case on dual theories, one in which it had a stake – and the other in which it did not. *See* Ex. 1 [#181], p. 8, to 2nd Declaration of Laura Caldera Taylor submitted herewith. (ReliOn "has long made it clear to the Court and to Hydra that it believed Hydra and ASRC are guilty of **either** patent infringement *** – **or** false public disclosures***.") (emphasis added); *compare* Ex. 2 [#121] to 2nd Taylor Decl.  Now, ReliOn wants to avoid its obligation to comply with this Court's Order setting the claims construction deadline to permit it additional time to put together an exit strategy. This Court should not stay the claims construction deadline. Rather, the Court should require ReliOn to comply with this Court's claims construction Order and tell the Court and Hydra how it interprets the '556 Patent.

It is fundamentally clear that "[a] plaintiff in a patent infringement suit has an obligation to fully investigate accused products before filing suit. *See, e.g., Refac Int'l, Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 281, 286-88 (C.D. Cal. 1991) (imposing Rule 11 sanctions on patent infringement plaintiff that failed to reverse engineer or examine accused products prior to filing complaint)." *See Eon-Net, L.P. v. Flagstar Bancorp, Inc.*, 239 F.R.D. 609, 615 (W.D. Wash. 2006).  It has also become clear that in this case ReliOn filed this suit on the basis of information it found on the Internet. *See* Ex. 3 to 2nd Taylor Decl. And, after filing this lawsuit, ReliOn's initial efforts were devoted to trying to strong arm Hydra into attesting not only to the validity of the '556 Patent, but to a claims construction it knew was much

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]**
**Page 2**

broader than it could legally enforce.  *See* Ex. 6 to Declaration of Laura Caldera Taylor – Filed Under Seal and submitted herewith ("Taylor Decl.").

As explained in more detail below, when Hydra would not agree to ReliOn's over-reaching interpretation of the '556 Patent, ReliOn did its best to use this litigation to destroy Hydra by placing its highly confidential information in the public record of this Court, knowing that doing so could impair Hydra's intellectual property rights to the underlying inventions or secrets that were disclosed.  ReliOn has also made spurious allegations in the Court record as frequently as possible knowing that these public accusations could negatively impact investment activities vital for a start up, like Hydra.  And, ReliOn unabashedly sought to win this case without ever having to address the merits.

Slightly more than 24 hours after this Court entered its *final* deadline for ReliOn to come forward with its claims construction, ReliOn filed its motion to dismiss and to stay the claims construction deadline.  While that conduct in and of itself is intriguing, when coupled with the inescapable fact that ReliOn knew or should have known for many years before it ever brought suit that interpreting the '556 Patent so broadly as to cover stack-based fuel cell technology would render the patent invalid – but the limitations of isolation of an individual fuel cell (or membrane) renders the patent useless – ReliOn's continued attack against Hydra's stack based technology can not be seen as anything less than abuse of process.

As will be set out in detail in Hydra's opposition to ReliOn's motion to dismiss Hydra's counterclaims [# 203], ReliOn's motion to dismiss and covenant not to sue are insufficient to relieve this Court of jurisdiction over Hydra's counterclaims.  And, as ReliOn continues to allege that Hydra is infringing the '556 Patent and continues to make implied threats of future litigation, this Court should retain jurisdiction over Hydra's counterclaims and should not permit ReliOn to escape its obligation to come forward with its claims

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]
Page 3**

construction. *See* ReliOn's Memorandum in Support of its Motion for Voluntary Dismissal of Complaint [# 204].

While Hydra is confident that the shifting tide in the legal landscape of patent infringement litigation provides sufficient support for this Court to retain jurisdiction over Hydra's counterclaims, in an abundance of caution Hydra will ask this Court to condition ReliOn's dismissal of its Amended Complaint on, among other things, ReliOn's disclosure of its claims construction. Given the history of ReliOn's conduct in this case, even if this Court grants ReliOn's motion to dismiss Hydra's counterclaims, it should nonetheless require ReliOn to provide its claims construction, and if ReliOn fails to do so, this Court should give Hydra its requested construction.

## **FACTUAL HISTORY**

ReliOn filed this lawsuit on April 28, 2006, alleging one count of patent infringement because Hydra had allegedly "made, used, sold, and/or offered for sale in the United States a modular, hot-swappable fuel cell product that infringes the '556 Patent" which has more than 300 claims. *See* Complaint [#1] at ¶ 9 and Exhibit 1 thereto. After it was served with the Complaint, *Hydra* "initiated settlement discussions with *** ReliOn, Inc. in August 2006." *See* Ex. 6 to Taylor Decl. ReliOn did not serve Hydra with any discovery requests until it believed that settlement discussions had broken down over, among other things, ReliOn's insistence

*See* Ex. 5 to 2nd

---

[1] The blank portions of this document were included in the version of this document filed under seal.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]**
**Page 4**

Taylor Decl. Having failed in its attempt to extract from Hydra a claims construction ReliOn could never get from any court, ReliOn set out on a mission to punish Hydra severely for failing to give in to ReliOn's unreasonable demands and to "set up" Hydra for the ultimate sanction – striking Hydra's affirmative defenses and counterclaims and entering judgment for ReliOn without ever addressing the merits of its claim.

After settlement discussions broke down from ReliOn's perspective, ReliOn began its campaign to win this case through sanctions. ReliOn's first set of discovery requests were served on October 18, 2006, and although Hydra's responses were not due until November 20, 2006, ReliOn's lawyers billed $3,562.50 – *before* Hydra's discovery responses were even due – drafting a motion to compel and other tasks related thereto. *See* Exs. 4 and 6 to 2nd Taylor Decl. As explained in ReliOn's counsel's own words, these early tasks were in "[p]reparation of *further* correspondence with Mr. Vergamini re: discovery *in order to set up discovery motion.*" *Id.* at Ex. 6 (emphasis added).

And, as the record clearly demonstrates, although Hydra had rejected ReliOn's over reaching settlement proposal, its principals still thought that the parties were engaged in good faith settlement discussions. Thus, when ReliOn requested an "Inspection," Hydra's principals were under the impression that the purpose of the "Inspection" was to "further settlement negotiations" *with* ReliOn's principals. *See* Ex. 7 to 2nd Taylor Decl. at ¶¶ 6 and 8 [# 95]; *see also* Ex. 8 to 2nd Taylor Decl. at ¶¶ 6 and 7 [# 96]. But, ReliOn's trial counsel, Mr. Bocchieri, arrived with Mr. Christensen, a court reporter and a videographer. *See* Ex. 8 to 2nd Taylor Decl. at ¶¶ 4-6 [# 96]. Unbeknownst to Hydra's principals, Mr. Christensen was employed by Wells St. John, ReliOn's patent prosecution counsel, where he had worked since September 2006, and has provided patent prosecution services to ReliOn. *See* Ex. 9 to 2nd Taylor Decl. at ¶¶ 1 and 11 [# 120]. Before joining Wells St. John, Mr. Christensen

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]**
**Page 5**

served as ReliOn's VP of Engineering and Technology where he was actively involved in developing ReliOn's IP portfolio and offensive strategy. *Id.*; *see also* Ex. 7 to Taylor Decl.

While the relevance of Mr. Christensen's involvement was not apparent to Hydra's principals at the time, when Hydra's principals asked about the court reporter and videographer, "Mr. Bocchieri assured [them] that [the 'Inspection'] was not a deposition, and that any transcript that came out of the 'Inspection' would not be used in court." *See* Ex. 7 to 2nd Taylor Decl. at ¶ 8 [#95]; *see also* Ex. 8 to 2nd Taylor Decl. at ¶ 6 [#96]; *see also* Ex. 1 to Taylor Decl. Shortly after Mr. Twedt's and Mr. Shafer's Declarations were filed, Mr. Bocchieri filed an opposing declaration testifying that "the Inspection was pursuant to Rule 34 **and not for settlement purposes**" *See* Ex. 10 to 2nd Taylor Decl. at ¶ 4 [# 111] (emphasis added). Mr. Bocchieri went even further explaining that the "statements in the Hydra Declarations that they 'expected' only settlement discussions and were 'surprised' by the court reporter and videographer are contradicted by the formal Rule 34(a) Request, by my discussions with Mr. Vergamini leading up to the Inspection, and the conduct of the Inspection itself." (emphasis added). *Id.*

Shakespeare might have said, "the lawyer doest protest too much, methinks." And, he would have been correct. In his most recent declaration in support of ReliOn's Motion to Dismiss [#205], Mr. Bocchieri contradicts his earlier testimony by stating that, "[i]n order **to promote settlement**, **ReliOn's counsel** also **conducted a Product Inspection** in December 2006." *See* Ex. 11 to 2nd Taylor Decl. at ¶ 4 [#205] (emphasis added).

Mr. Bocchieri's current testimony vindicates, at least in part, Hydra's principals – who accurately represented to this Court back in August that the "Inspection" was conducted under the ruse of ongoing settlement discussions. And, not only was Hydra duped into making recorded statements about its proprietary research and development efforts to ReliOn's litigation counsel, *and Mr. Christensen*, without the protections of either a

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]
Page 6**

protective order or the rules governing depositions, ReliOn took advantage of the opportunities this litigation afforded it to engage in anti-competitive conduct by filing the entire transcript of the "Inspection" into the public record. *See* Ex. 12 to 2nd Taylor Decl. at ¶ 4 [#43].

Mr. Bocchieri understood that highly sensitive information was disclosed during the "Inspection." In fact, in his January 31, 2007 Declaration, to which he attached the entire "Inspection" transcript, he testified that there "had been no protective order entered in this case, and yet Hydra's representatives discussed the various patent applications at issue extensively at the product inspection." *See* Ex. 12 to 2nd Taylor Decl. at ¶ 5 [#43]. ReliOn knew, or should have known, that placing Hydra's highly sensitive, proprietary and confidential information into the public record could jeopardize certain associated intellectual property rights.

Equally concerning is the fact that Peter Christensen, ReliOn's former Vice-President of Engineering and Technology, then a consultant with ReliOn's patent prosecution counsel, and Mr. Bocchieri asked Hydra's representatives the following questions and received the following answers during the December 11, 2006, "Inspection."

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]**
**Page 7**

*See* Ex. 2 to Taylor Decl. at pp. 33:19 – 35:1.

      ReliOn knew that it could not read the claims in the '556 Patent so broadly as to cover "hot swapping" stacks because to do so would render the patent invalid.  As explained in Hydra's Invalidity Contentions, "[l]aunched in 1965, the Gemini V spacecraft was the first spacecraft to use fuel cells."  *See* Ex. 13 to 2nd Taylor Decl.; *see also* Ex. 14 to 2nd Taylor Decl.  There were two fuel cell systems on the Gemini V spacecraft, each of which "contained three stacks" each of which "had 32 individual cells connected in series" but the "stacks were connected in parallel and could be switched in and out of use individually."  *See* Ex. 13 to 2nd Taylor Decl. at p. 2.

      The ability to individually selectively deactivate a stack was not theoretical.  In fact, the crew reported that they were "awakened at 36 hours 50 minutes to purge the fuel cells because of poor load sharing.  The purge did not correct the problem, and at 37 hours 40 minutes, *stack B of fuel cell section 2 failed completely and was removed from the line*."  *See* Ex. 15 to 2nd Taylor Decl. at pp. 1 - 2 (emphasis added).  "Fuel cell stack 1C failed during the sleep period, and the crew were awakened early to turn off a switch to stop the flow of reactants to this stack."  *Id.* at pp. 1 - 4.  "At 89 hours the two remaining stacks--2A and 2C--in fuel cell section 2 were carrying less than one-half their normal share of the load.  Because of this, two of the four main batteries had to be placed on the line at 91 hours 7 minutes to permit powering up the computer, and the other two batteries were placed on the line at 92 hours 42 minutes.  All load was then removed from section 2 of the fuel cell system."  *Id.*

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]
Page 8**

"Although the system had difficulties, it supplied approximately 2450 ampere-hours during the mission." *Id.* at 5 – 63.

Further,

Nonetheless, ReliOn told this Court that the "[i]ndividually selectively deactivated" language in at least Claims 1 and 36 of the '556 Patent should be read to cover a fuel cell system in which "[o]ne or more of the fuel cell stacks or modules can be removed or otherwise disconnected from service while others continue to operate, *i.e.*, hotswappable." *See* Ex. 16 to 2nd Taylor Decl., p. 3 [# 56]. NASA removed one or more stacks from service while remaining stacks operated in 1967 during the Gemini XII flight. Clearly then, ReliOn did not invent this technology in the late 1990s.

Not only did ReliOn over state the reach of the '556 Patent to this Court, it took an entirely different position in the reexam pending before the USPTO. There, knowing that the prosecution history would preclude it from arguing that the '556 Patent covers a fuel cell system where "[o]ne or more of the *fuel cell stacks* or modules can be removed or otherwise disconnected from service while others continue to operate, *i.e.*, hotswappable," *See* Ex. 16 to 2nd Taylor Decl., p. 3 [# 56] (emphasis added). ReliOn instead distinguished the "conventional stack" from its invention because within a stack "individual fuel cells cannot

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]
Page 9**

be individually selectively deactivated – all fuel cells in a stack operate together."[2]  See Ex. 17 to 2nd Taylor Decl., p. 3.

In addition to taking a very different stance before the USPTO in the pending reexam, ReliOn never disclosed the NASA art described above to the USPTO until it forwarded Hydra's Invalidity Contentions.  *See* Ex. 18 to 2nd Taylor Decl.

Furthermore, ReliOn has known for at least the 16 months since the "Inspection" that

Yet it continued to vigorously pursue this litigation alleging that Hydra's stack based technology infringed, all the while apparently pursuing an alternative theory of "a potential tort" for allegedly false press releases, knowing it had neither pled such a claim nor had any legal basis to pursue it.

> **MR. BOCCHIERI:** It is a potential tort for one thing, ***
>
> **THE COURT:** Is your client a victim of this tort, suing them here in Oregon?
>
> **MR. BOCCHIERI:** No, no, your Honor, we're not. ***

*See* Ex. 19 to 2nd Taylor Decl. at p. 30: 7 – 24.

Now that ReliOn is forced to come forward with its claims construction, after having done its best to use this Court to keep Hydra out of the market for nearly two years, it wants out of this litigation and out of its obligation to disclose its claims construction.

## ARGUMENT

**1.    ReliOn's Motion to Stay should be denied because the balance of the equities favors Hydra and ReliOn can not make out a clear case of hardship or inequity in being required to go forward.**

Although a "district court has inherent power to control the disposition of the causes

---

[2] At the same time, and without any explanation, ReliOn conceded that both conventional stacks, and the "modules" disclosed in the '556 Patent contain a plurality of fuel cells, although it did not apply the same selective deactivation limitation at the individual cell level *within* its "module" as it did to conventional stacks.  *Id.*

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]
Page 10**

on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants" the "exertion of this power calls for the exercise of a sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). As a threshold matter, the "proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 1650 (1997). Under well established precedent, the Court must weigh "the competing interests which will be affected by the granting or refusal to grant a stay." *CMAX*, 300 F.2d at 268.

"Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*, *citing to*, *Landis v. North American Co.*, 299 U.S. 248, 254-255, 57 S.Ct. 163 (1936). "[I]f there is even a fair possibility that the stay for which he prays will work damage to some one else" the moving party "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 166 (1936).

### A.  Hydra will be damaged if the stay is granted.

Although ReliOn seeks dismissal of its patent infringement claims, it continues to assert that Hydra infringes the '556 Patent. *See* ReliOn's memorandum in support of its motion to dismiss [# 204] ("ReliOn emphasizes that it is **not** dismissing its Complaint because it believes the fuel cells being developed by Defendant Hydra Fuel Cell Corporation ('Hydra') do not infringe ReliOn's patent. ReliOn provided the Court and Hydra with ample evidence that Hydra was developing an infringing product."); *see also* Declaration of Breton Bocchieri [# 205] (" Hydra never produced documents, declarations or witnesses under oath

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]
Page 11**

showing that Hydra had, in fact, changed its fuel cell designs to no longer infringe any claim of the '556 Patent.").

Implicit in ReliOn's motion to dismiss is the threat of future litigation should Hydra's design change as it begins commercial production. *See* ReliOn's memorandum in support of its motion to dismiss at p. vii [# 204] ("Plain legal prejudice, however, does not result simply when defendant faces the prospect of a second lawsuit or when plaintiff merely gains some tactical advantage. … Further, it is clear that the mere inconvenience of defending another lawsuit does not constitute plain legal prejudice." *Hamilton,* 679 F.2d at 145.  "[We] follow the traditional principle that dismissal should be allowed unless the defendant will suffer some plain prejudice *other than the mere prospect of a second lawsuit.*"  *In re Lowenschuss*, 67 F.3d 1394, 1400 (9th Cir. 1995) (quoting *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976) (emphasis in original); accord *Westlands Water District*, 100 F.3d at 96 ("the threat of future litigation which causes uncertainty is insufficient to establish plain legal prejudice").

In light of the United States Supreme Court's recent decision in *MedImmune, Inc. v. Genentech, Inc.,* 127 S. Ct. 764 (2007), and recent decisions from the Federal Circuit, ReliOn's continued assertion that Hydra's current activities infringe the '556 Patent and its implicit threats of future litigation put this case outside of the protections ReliOn seeks under *Super Sack*.  *See Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp*., 482 F.3d 1330, 1340 (Fed. Cir. 2007) ("We hold that *MedImmune* applies to Teva's declaratory judgment action and takes precedence over the district court's application of *Pfizer*, which required Teva to show a single type of Article III injury-in-fact, 'a reasonable apprehension of imminent suit.'") (citations omitted); *Sandisk Corp. v. STMicroelectronics NV*, 480 F.3d 1372, 1381 (Fed. Cir. 2007*)* ("Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]**
**Page 12**

arguably illegal behavior or abandoning that which he claims a right to do. . . . We hold only that where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.")*;* and *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345 (Fed. Cir. 2007) ("Although neither *Super Sack* nor *Amana* has been expressly overruled, both applied the disapproved 'reasonable apprehension of imminent suit' test.  Therefore, although the holdings in both cases are not necessarily dependent on the 'reasonable apprehension of imminent suit' requirement, we nevertheless base our analysis of whether jurisdiction currently exists over Nucleonics's declaratory judgment counterclaims strictly on the framework of *MedImmune*.").

And, ReliOn's ongoing allegations that Hydra continues to infringe make readily apparent Hydra's need both to continue to pursue its counterclaims of non-infringement and invalidity, and to receive ReliOn's claims construction.  Hydra will be harmed if ReliOn refuses to provide this information at the present time.  It is abundantly clear that "[i]t is not the duty of defendants *** 'to make their own technical analysis of infringement in order to intelligently decide whether to fight or settle.'"  *See Refac Int'l, Ltd. V. Hitachi*, 921 F.2d 1247, 1253 (Fed. Cir. 1990); *citing to and quoting Refac Int'l, Ltd. V. Hitachi, Ltd.*, No. CV 87-6191 TJH (Bx), Order at 8 (C.D. Cal. Feb. 22, 1989); *see also* Breton August Bocchieri, *Obtaining Attorney Fees in Intellectual Property Cases:  Rule 11 and Other Sanctioning Mechanisms*, 33 IDEA 2, 212 (1993) (Stating that the plaintiff in *Refac* "attempt[ed] to reverse the burden of proof by forcing the defendants to prove non-infringement.").

ReliOn's claims construction is vital to an understanding of ReliOn's ongoing allegations of infringement.  Hydra needs this information "in order to intelligently decide

Bullivant|Houser|Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]**
**Page 13**

whether to fight or settle." *See Refac*, 921 F.2d at 1253; *see also*, *CMAX*, 300 F.2d at 269 ("[A]ll discovery proceedings have been concluded, and hence there is presumably no problem of preserving evidence. *If there were such a problem, application could be made in the district court to permit further discovery proceedings*.")

      **B.    ReliOn can not make out a clear case of hardship or inequity in being required to go forward.**

On September 4, 2007, this Court issued its first order requiring the parties to meet and confer and submit a joint claims construction filing [#116]. That deadline was postponed to January 18, 2008, and at 2:36 p.m. on January 17, 2008, ReliOn moved this Court for an Order extending that deadline [# 154]. On January 24, 2008, this Court gave ReliOn until March 14, 2008 to serve its initial claims construction on Hydra. *See* January 24, 2008, Minute Order [#158]. During a hearing on that date, this Court made clear, "Don't expect me to extend the deadline for something that's not meaningful, because I won't." *See* Ex. 20 to 2nd Taylor Decl. Then, on March 3, 2008, ReliOn filed another motion to extend the claims construction deadline [#171]. At the March 11, 2008, hearing, this Court again made clear, "If I extend the deadline, it is going to be the last time it is extended. And people are going to have to file whatever they think is appropriate in terms of a joint claims construction statement by that deadline." *Id.* at Ex. 19. On March 27, 2008, this Court gave ReliOn until April 7, 2008 to serve Hydra with its claims construction [#202]. Slightly more than 24 hours later, ReliOn filed its motion to dismiss [#203] and its motion to stay claims construction [# 208].

This case has been pending for more than two years. ReliOn's continued efforts to evade putting forth its claims construction are transparent and inappropriate. ReliOn is a sophisticated consumer of intellectual property legal services and has been regularly monitoring its competitors for some time. *See* Ex. 16 to 2nd Taylor Decl.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]
Page 14**

*See* Ex. 8 to Taylor Decl.  ReliOn has the ability to tell this Court and Hydra what the '556 Patent really means.

ReliOn simply can not make out a clear case of hardship or inequity under the facts of this case.

## CONCLUSION

As set forth above, ReliOn's claims construction will likely end this dispute as ReliOn will finally be forced to choose between preserving its patent by construing its claims very specifically – in fact, down to the individual fuel cell or membrane – or risking invalidation of its patent by construing its claims to cover stack based technology.  As ReliOn must concede, if it "misrepresented its technology in its patent application, its patent would be invalidated for not enabling those skilled in the pertinent art to practice the invention and for failing to disclose the best mode.  *See AK Steel Corp, v. Sollac*, 344 F.3d 1234, 1245 (Fed. Cir. 2003) ('we have on occasion invalidated patent claims as not having been enabled, despite the PTO's having allowed those claims.'); *Northern Telecom, Inc. v. Datapoint Corp*., 908 F.2d 931, 940-41 (Fed. Cir. 1990) ('The district court held that claims 19-20, 22, and 24-28 of the '375 patent are invalid on the basis that Sycor concealed the best mode for carrying out the invention of these claims.... The district court's determination on this point is affirmed.')."  *See* ReliOn's Supplemental Brief in Support of Motion to Compel at p. 6 [#42].

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]**
**Page 15**

Because the balance of the equities favors Hydra, and ReliOn can not make out a clear case of hardship or inequity in being required to go forward, ReliOn's motion to stay the claims construction deadline should be denied.

DATED: April 4, 2008.

                                     BULLIVANT HOUSER BAILEY PC

                                     BY  /s/ Laura Caldera Taylor
                                             **Renée E. Rothauge**, OSB #903712
                                             **Laura Caldera Taylor**, OSB #993786
                                             Telephone: 503.228.6351
                                             Attorneys for Defendant Hydra Fuel Cell
                                             Corporation

**Bullivant|Houser|Bailey PC**
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HYDRA FUEL CELL CORPORATION'S OPPOSITION TO MOTION TO STAY [#208]**
**Page 16**

## CERTIFICATE OF SERVICE

I, Laura Caldera Taylor, certify that on April 4, 2008, I served the foregoing **HYDRA FUEL CELL CORPORATION'S OPPOSITION TO RELION'S MOTION TO STAY OF MARCH 27, 2008 ORDER PENDING RULING ON MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT [#208]** on the attorney(s) of record herein pursuant to L.R. 100.7 via CM/ECF.

>Breton August Bocchieri
>Thomas Douvan
>Nguyen Huu Nguyen
>Thelen Reid & Priest LLP
>333 S. Hope Street, Suite 2900
>Los Angeles, CA 90071-3048
>e-mail:  bbocchieri@thelenreid.com
>            tdouvan@thelenreid.com
>            nnguyen@thelenreid.com
>
>Scott D. Eads
>Perkins Coie LLP
>1120 NW Couch St., 10th Floor
>Portland, OR 97209-4128
>e-mail:  seads@perkinscoie.com
>
>Jeffrey M. Kilmer
>Kilmer Voorhees & Laurick PC
>732 NW 19th Ave
>Portland, OR 97209
>e-mail: jkilmer@kilmerlaw.com

>                    BY   /s/ Laura Caldera Taylor
>                         Laura Caldera Taylor, OSB #99378
>
>                         Attorneys for Defendant

10492578.1

Bullivant|Houser|Bailey PC

888 SW Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

**CERTIFICATE OF SERVICE
Page 1**