**Renée E. Rothauge**, OSB #903712
E-mail: renee.rothauge@bullivant.com
**Laura Caldera Taylor**, OSB #993786
E-mail: laura.taylor@bullivant.com
BULLIVANT HOUSER BAILEY PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915
Attorneys for Defendant Hydra Fuel Cell
Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **RELION, INC.**, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>**HYDRA FUEL CELL CORPORATION**, a Nevada corporation; and **AMERICAN SECURITY RESOURCES CORPORATION**, a Nevada corporation,<br><br>Defendants. | Civil No.: 3:06-CV-00607 HU<br><br>**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT PURSUANT TO FED.R.CIV.P. 41(a), AND TO DISMISS COUNTERCLAIMS PURSUANT TO FED.R.CIV.P. 12(b)**<br><br>**(REDACTED)** |
| **HYDRA FUEL CELL CORPORATION**, a Nevada corporation,<br><br>Counter Claimant,<br><br>v.<br><br>**RELION, INC.**, a Washington corporation,<br><br>Counter Defendant. | |

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT**
**Page i**

## I. INTRODUCTION

ReliOn failed in its attempt to strong-arm Hydra into conceding that ReliOn's patent covers any "modular," "scalable" or "hot swappable" fuel cell system. ReliOn failed in its attempt to coerce Hydra into paying $50,000 for ReliOn's attorney's fees incurred in its effort to obtain an over-reaching and anti-competitive consent judgment. ReliOn failed in its attempt to "set-up" Hydra and obtain a judgment of validity and infringement as a discovery sanction, without ever addressing the merits. ReliOn failed in its attempt to conceal its use of this Court to further its anti-competitive goals. ReliOn failed to comply with its discovery obligations. And, ReliOn failed in its attempt to keep a new competitor out of the market. So too should ReliOn fail in its attempt to back out of this litigation before committing to its claims construction.

This Court should condition ReliOn's dismissal of its Amended Complaint upon: (1) ReliOn's compliance with this Court's order directing it to provide its claims construction, or entering Hydra's claims construction; (2) requiring that one set of all discovery in this case be held in escrow by a court appointed Oregon attorney; and (3) that ReliOn pay Hydra's attorney's fees for defending this case either now or as a condition for proceeding with any future litigation against Hydra. This Court should deny ReliOn's motion to dismiss Hydra's counterclaims for invalidity, non-infringement and unenforceability of the '556 Patent.

## II. FACTUAL HISTORY

**A.      ReliOn's lawsuit was not based on a claim by claim comparison to Hydra's fuel cell systems, but rather by ReliOn's desire to shut down a competitor it believed had solicited its investors for funding.**

This lawsuit was not filed on the basis of ReliOn's inspection of any Hydra fuel cell system, its purchase of a Hydra fuel cell system, or its comparing any of the '556 Patent's claims to any actual Hydra fuel cell system. *See* Exhibit 1 to 2nd Declaration of Laura Caldera Taylor. Rather, ReliOn brought suit because Hydra allegedly "announced

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 1**

an identical product" "that had what they called hot swappable" and " showed pictures on the Internet," then began "soliciting Relion's own investors." *See* Ex. 2 to 2nd Taylor Decl. (18:13-23); ("[S]omething posted on the Web site really is what got our attention, and it's a blueprint of what they call a hot-swappable -- a diagram of a hot-swappable fuel cell that started the suit, okay, and they have a whole connected diagram."); *see also* Exs. 3 and 4 to 2nd Taylor Decl. (63:9-13).

The alleged solicitation of its investors did not sit well with ReliOn, who told this Court that it is a "[v]enture capital based, small company" whose "investors are very important to them." *See* Ex. 2 to 2nd Taylor Decl. (17:22-24); *compare* Ex. 25 to 2nd Taylor Decl. (ReliOn Website – About Us Page)("ReliOn is the world leader in the development and marketing of modular, cartridge-based, proton exchange membrane fuel cell technology."). It is no wonder, then, that ReliOn improperly pursued this case on dual theories, one in which it had a stake (alleged patent infringement) – and the other in which it did not (alleged securities fraud). As a company built on venture capital, ReliOn knew that its consistent spurious allegations that "Hydra and ASRC are guilty of **either** patent infringement *** – **or** false public disclosures***" could negatively impact investment activities for a start up like Hydra. *See* Ex. 5 to 2nd Taylor Decl.

**B.     ReliOn hoped to obtain Hydra's consent to a judgment establishing a very broad interpretation of the '556 Patent as part of its overall IP strategy.**

It was *Hydra* who "initiated settlement discussions with *** ReliOn, Inc. in August 2006." *See* Ex. 6 to 2nd Taylor Decl. ReliOn would not agree to settle this dispute unless Hydra agreed to a consent judgment and settlement agreement that would require it to retract advertisements relating to "fuel cell products which used the terms 'modular,' scalable,' and/or 'hot swappable.'" *See* Ex. 6 to 2nd Taylor Decl. By that time, ReliOn knew that the '556 Patent could never be legitimately interpreted so broadly as to cover a modular, scalable or hot swappable fuel cell systems except when

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 2**

interpreted very specifically – in fact, down to the individual fuel cell or membrane. *See* Ex. 7 to 2nd Taylor Decl.

**C.  ReliOn made numerous misrepresentations to this Court in its attempt to gain the ultimate sanction – dismissal without being forced to address the merits – and in its efforts to add Hydra's parent company as a defendant.**

**1.  ReliOn knew by no later than August 2006 that Hydra was not pursuing a "hot swappable" fuel cell system, yet it repeatedly told this Court that Hydra was.**

Even assuming that ReliOn's '556 patent covered all "hot swappable" fuel cell designs, which Hydra vehemently disputes, ReliOn admits that it knew by no later than August 2006, that Hydra had "ceased using 'hot swappable' fuel cell designs." *See* Ex. 8 to 2nd Taylor Decl., ¶ 2. And, when ReliOn's principals visited Hydra's facilities, Hydra showed them the stack-based system it was developing and

*See* Ex. 1 to Declaration of Laura Caldera Taylor Filed Under Seal (7:3-7).

Then, when Peter Christensen, ReliOn's former Vice-President of Engineering and Technology, at that time a consultant with ReliOn's patent prosecution counsel, and Mr. Bocchieri attended the December 11, 2006 "Inspection" they asked Hydra's representatives the following questions and received the following answers.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT**
**Page 3**

1

*See* Ex. 1 to Taylor Decl. (33:19-35:1).

2. **ReliOn scheduled the "Inspection" as part of settlement discussions, but represented to this Court that the "Inspection" was pursuant to Fed. R. Civ. P. 34 only.**

Hydra's principals, Mr. Twedt and Mr. Schafer, filed declarations in opposition to ReliOn's motion to amend its complaint to add Hydra's parent company, American Securities Resources ("ASRC"). *See* Exs. 9 and 10 to 2nd Taylor Decl. In their declarations, Hydra's principals explained that when ReliOn requested an "Inspection," they were under the impression that the purpose of the "Inspection" was to "further settlement negotiations." *See* Ex. 9 to 2nd Taylor Decl. at ¶¶ 6-9; *see also* Ex. 10 to 2nd Taylor Decl. at ¶¶ 4-7. But, ReliOn's trial counsel, Mr. Bocchieri, arrived with Mr. Christensen, a court reporter and a videographer. *See* Ex. 10 to 2nd Taylor Decl. at ¶¶ 4-6.

Shortly after Mr. Twedt's and Mr. Shafer's Declarations were filed, Mr. Bocchieri filed an opposing declaration testifying that "the Inspection was pursuant to Rule 34 **and not for settlement purposes**" *See* Ex. 11 to 2nd Taylor Decl. at ¶ 4 (emphasis added). However, in his most recent declaration in support of ReliOn's Motion to Dismiss. Mr. Bocchieri contradicts his earlier testimony by stating that, "[i]n order **to promote settlement, ReliOn's counsel** also **conducted a Product Inspection** in December

---

[1] The blank portions of this document were included in the version of this document filed under seal.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 4**

2006." *See* Ex. 12 to 2nd Taylor Decl. at ¶ 4 (emphasis added).

    **3.**    **ReliOn's representations to this Court that everyone respected ReliOn's patents but Hydra is contradicted by ReliOn's discovery.**

    As part of its effort to obtain the ultimate sanction – dismissal without addressing the merits – ReliOn told this Court on June 12, 2007 that "everybody has respected Relion's patents, with the exception of [Hydra]." *See* Ex. 2 to 2nd Taylor Decl. (18:11-12).

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 5**

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 6**

4.    **ReliOn represented to this Court that the '556 Patent would cover selective deactivation of individual fuel cell stacks, but told the USPTO that ReliOn's patent is valid because it is not so broad as to cover fuel cell stacks.**

ReliOn told this Court that the "[i]ndividually selectively deactivated" language in at least Claims 1 and 36 of the '556 Patent should be read to cover a fuel cell system in which "[o]ne or more of the fuel cell stacks or modules can be removed or otherwise disconnected from service while others continue to operate, *i.e.*, hotswappable." *See* Ex. 13 to 2nd Taylor Decl. (p. 4).

Before the USPTO, where the prosecution history of the '556 Patent would preclude it from arguing that the '556 Patent covers isolation of fuel cell stacks, ReliOn instead distinguished the "conventional stack" from its invention because within a stack "individual fuel cells cannot be individually selectively deactivated – all fuel cells in a stack operate together."[2] See Ex. 14 to 2nd Taylor Decl. (p. 5).

---

[2] At the same time, and without any explanation, ReliOn conceded that both conventional stacks, and the "modules" disclosed in the '556 Patent contain a plurality of fuel cells, although it did not apply the same selective deactivation limitation at the individual cell level *within* its "module" as it did to conventional stacks. *Id.* (at p. 6).

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 7**

D.    **ReliOn improperly obtained and used discovery from Hydra then failed to comply with its own discovery obligations.**

1.    **ReliOn gained access to Hydra's highly confidential information through false pretenses and disclosed it in a public forum in order to harm Hydra and gain an unfair competitive advantage.**

ReliOn scheduled the "Inspection" under the ruse of ongoing settlement discussions. Hydra was tricked into making recorded statements about its proprietary research and development efforts to ReliOn's litigation counsel, *and Mr. Christensen*, without the protections of either a protective order or the rules governing depositions. *See* Ex. 9 to 2nd Taylor Decl. at ¶¶ 6-9; *see also* Ex. 10 to 2nd Taylor Decl. at ¶¶ 4-7. "In order **to promote settlement, ReliOn's counsel** also **conducted a Product Inspection** in December 2006" (emphasis added). *See* Ex. 12 to 2nd Taylor Decl. at ¶ 4; *see also* Ex. 15 to 2nd Taylor Decl. ReliOn took advantage of the opportunities this litigation afforded it to engage in anti-competitive conduct by filing the entire transcript of the "Inspection" into the public record. Ex. 16 to 2nd Taylor Decl. at ¶ 4. ReliOn knew, or should have known, that placing Hydra's highly sensitive, proprietary and confidential information into the public record could jeopardize certain associated intellectual property rights.

2.    **Through deceptive tactics, Peter Christensen, a competitive-decision maker, not only gained access to Hydra's highly-confidential information, he was able to shape the discussion that became the "Inspection" transcript.**

"When deciding whether one side's patent prosecutor should have access to the opposing party's confidential information, courts must balance the 'one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors.' The key inquiry is whether the attorney in question is in fact a competitive decision-maker.: *Presidio Components, Inc. v. American Technical Ceramics Corp.* 2008 WL 608407, 4 (S.D.Cal., 2008) (citations omitted). Patent prosecution advise is defined as competitive decision-making and advise "on the scope of patent claims must also be defined as competitive decision-making. * * * Advice

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 8**

regarding the scope of the claims in a patent is sufficiently related to patent prosecution to be defined as competitive decision-making." *Chan v. Intuit*, Inc.  218 F.R.D. 659, 662 (N.D.Cal. 2003).

Peter Christensen is clearly a "competitive decision maker" for ReliOn.  His access to Hydra's research and development could be used by Peter Christensen and Wells St. John in further prosecution of existing patents, toward claim language and limitations tailored to Hydra's future projects. *See Motorola, Inc. v. Interdigital Technology Corp.*  1994 WL 16189689, *5 (D.Del.) (D.Del. 1994) ("Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped 'untainted,' another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the DS & M attorneys may be.")

### 3.    Even after this Court placed the "Inspection" transcript under seal, ReliOn offered to provide a copy of it to the United States Patent and Trademark Office.

During the hearing on August 30, 2007, this Court noted its concerns about ReliOn's filing the transcript from the "Inspection" in the public record.  Specifically, this Court said, "[l]et's talk for a moment about the transcript of the inspection that took place at defendant's place of business. I didn't really understand why it got filed with the Court. I didn't think it was necessary. It got filed. It got filed without being under seal. It is entirely possible that it has been accessed by people who wouldn't have otherwise had access to it had it been sealed, and I'm having trouble understanding why I shouldn't seal it now." *See* Ex. 3 to 2nd Taylor Decl. (22:12-20)  Then, the Court ordered those documents filed under seal. *Id.* (22:24)

Notwithstanding this Court's order placing the "Inspection" transcript under seal, ReliOn offered to provide a copy of it to the United States Patent and Trademark Office.

ReliOn explained to the USPTO that there was "a ***court-ordered product inspection*** at Hydra's facility in Beaverton, Oregon. This inspection occurred on December 11, 2006, in which representatives of ReliOn interviewed representatives of Hydra regarding technical details of Hydra's prototype products. A limited facility tour and inspection of the products themselves was allowed. ***A transcript of the meeting is available if the Office wishes to review same***." (emphasis added). *See* Ex. 14 to 2nd Taylor Decl., p. 3, and Ex. 15 to 2nd Taylor Decl.

**4.      ReliOn failed to comply with this Court's orders to provide its claims construction.**

On September 4, 2007, this Court issued its first order requiring the parties to meet and confer and submit a joint claims construction filing [#116]. That deadline was postponed to January 18, 2008, and at 2:36 p.m. on January 17, 2008, ReliOn moved this Court for an Order extending that deadline to March 14, 2008 [# 154]. This Court gave ReliOn until March 14, 2008 to serve its initial claims construction on Hydra. *See* January 24, 2008, Minute Order [#158]. During a hearing on that date, this Court made clear, "Don't expect me to extend the deadline for something that's not meaningful, because I won't." *See* Ex. 17 to 2nd Taylor Decl. (25:8-9). Then, on March 3, 2008, ReliOn filed another motion to extend the claims construction deadline [#171]. At the March 11, 2008, hearing, this Court again made clear, "If I extend the deadline, it is going to be the last time it is extended. And people are going to have to file whatever they think is appropriate in terms of a joint claims construction statement by that deadline." *See* Ex. 18 to 2nd Taylor Decl. (52:21-25). On March 27, 2008, this Court gave ReliOn until April 7, 2008 to serve Hydra with its claims construction [#202]. Slightly more than 24 hours later, ReliOn filed its motion to dismiss [#203] and its motion to stay claims construction [# 208].

ReliOn failed to comply with this Court's March 27, 2008 Order and has not obtained any ruling from this Court permitting it to avoid its obligation to comply.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 10**

5.    **ReliOn refused to produce documents in Oregon, requiring Hydra to send its lawyer to Spokane, Washington, but represented to this Court that, it offered to ship the documents to Oregon.**

During the January 24, 2008 hearing, this Court asked counsel for the parties, "What arrangements have the parties made about expenses of producing documents to one another?" *See* Ex. 17 to 2nd Taylor Decl. (25:15-16). Hydra's counsel explained that Hydra had "been bearing the expense of producing and copying and delivering to the local counsel here in Portland" and "also bore the expense of receiving ReliOn's production, which we were required to go to Spokane, Washington to obtain." *See* Ex. 17 to 2nd Taylor Decl. (25:17-24) ReliOn's counsel contradicted Hydra's counsel stating, "Well your honor, we offered to ship them the documents. They came out to see if they could whittle it down and ended up asking for everything. We didn't require them to go there." *See* Ex. 17 to 2nd Taylor Decl. (25:25-26:3).

ReliOn's statement to the court is directly contradicted by its responses to Hydra's request for production and correspondence between counsel. ReliOn's General Objection No. 13. stated that, "ReliOn will produce any responsive documents that exist in ReliOn's possession, custody or control to the extent not objected to, *by allowing Hydra's counsel to inspect* the documents, subject to all Objections and a Protective Order, *at the offices of Wells St. John, 601 W. First Avenue, Ste. 1300, Spokane WA*, at a date and time to be arranged by counsel." *See* Ex. 26 to 2nd Taylor Decl. (p. 2) (emphasis added).

Hydra's counsel wrote to ReliOn's counsel on August 29, 2007, when ReliOn's production was then nine days late, stating, "At the outset, we take issue with ReliOn's *refusal to make discovery available in Oregon.* *** Please kindly advise as to when the discovery will be produced, the volume of discovery responsive to Hydra's discovery requests, whether the discovery is available in electronic format, and whether the discovery will be produced in Oregon." *See* Ex. 19 to 2nd Taylor Decl. (emphasis added). ReliOn's counsel responded on September 4, 2007, that "Fed. R. Civ. P. 34(b) expressly countenances ReliOn's response, which is especially appropriate given the volume of

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 11**

documents now available for inspection (over 40 linear feet of files). We thus maintain the propriety and efficiency of our response by making the documents available for inspection at Wells St. John. Please be advised (again) that you must make sufficient advance arrangements for the inspection, in order to allow for reservation of a conference room, assigning personnel, etc." *See* Ex. 20 to 2nd Taylor Decl. Counsel for the parties corresponded on this issue on September 19, 2007, September 24, 2007, September 26, 2007, and October 3, 2007. *See* Exs. 21, 22, 23 and 24 to 2nd Taylor Decl. At no time did ReliOn ever offer to produce its discovery in Oregon.

When Hydra's counsel brought this inaccuracy to Mr. Bocchieri's attention and asked for a correction to the record before the Court, he declined, stating that "it appears that Hydra's counsel has decided 'the best defense is a good offense.' That is why Ms. Taylor sent her lengthy letter containing numerous, unfounded and irrelevant accusations ***." *See* Exs. 27 and 28 to 2nd Taylor Decl.

**6.    ReliOn failed to comply with its obligations to produce documents.**

Although ReliOn's discovery was due on August 20, 2007, it was not produced until October 3, 2007. *See* Ex. 22 to 2nd Taylor Decl. And, when ReliOn did produce documents, for reasons unknown to Hydra, and unexplained by ReliOn, it made the strategic decision to avoid disclosure of documents and information maintained in ReliOn's files and electronic databases, choosing instead to voluntarily produce nearly 40 linear feet of its patent prosecution counsel, Wells St. John's, attorney files. *See* Exs. 20-24 of 2nd Taylor Decl. ReliOn's production was significantly lacking, particularly with regard to e-mails, internal memos, and documentation relating to the commercial embodiment of the '556 Patent such as marketing, sales, profitability projections, technical specifications and certification materials. *See* Ex. 8 to Taylor Decl. (p. 3).

**7.    ReliOn objected to many of Hydra's Requests for Admissions and its answers to others contradicts statements it made to this Court, to the USPTO or information contained in its document production.**

ReliOn objected to many of Hydra's requests for admissions for reasons that can

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 12**

not be squared with the positions they have taken in this litigation, before the USPTO, or the documents they produced in discovery. For example, ReliOn objected to Hydra's "definition of 'conventional fuel cell stack' *** on the grounds that it is vague and ambiguous." *See* Ex. 1 to 2nd Taylor Decl., p. 3. The term "conventional stacks" is well known in the art. In fact, in order to save the '556 Patent in the pending reexam, ReliOn sought to distinguish the claimed invention in the '556 Patent from "conventional stacks." ReliOn argued there that, "in any *conventional stack*, *** those individual fuel cells cannot be individually selectively deactivated — all fuel cells in a single stack operate together. In the fuel cell system disclosed in the '556 patent, each of the plurality of fuel cells is a fuel cell module (which in turn comprises a plurality of fuel cells) which can be individually selectively deactivated. Palmer does not teach a single fuel cell system in which individual fuel cells within a stack (which is the plurality of fuel cells taught in Palmer) can be selectively deactivated and remaining ones continue to operate. Therefore, Palmer does not teach expressly or inherently each element or limitation of claim 1, as required for rejection pursuant to 35 U.S.C. § 102." *See* Ex. 14 to 2nd Taylor Decl., p. 5.

ReliOn also objected to Hydra's request that ReliOn admit that "if an individual cell within a cartridge fails in any of ReliOn's Commercial Products, the entire cartridge will fail" on the basis that "the term 'fail' is not defined causing the request to be vague, ambiguous, and, consequently, overbroad and unduly burdensome." *See* Ex. 1 to 2nd Taylor Decl., p. 5. Yet, in ReliOn's submission pursuant to the April 11, 2007 hearing, ReliOn explained to this Court that, "Traditionally, fuel cells are configured as multiple membranes connected in series in a single unit that is called a 'stack.' If one of the membranes in a stack *fails*, the entire stack must be removed from service. To overcome this and many other attendant limitations, ReliOn developed and patented a unique product configuration in which the fuel cell membranes are mounted or otherwise assembled in such a way that the fuel cells may be reconfigurable to prevent the down

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 13**

time that narrowly occurs when one stack *fail*. A control system monitors each of the *cartridges or modules*." *See* Ex. 13 to 2nd Taylor Decl. (p. 2) (emphasis added).

And, in response to a request that ReliOn "admit that the most novel attribute of your commercial products is the ability to individually selectively deactivate a single failed fuel cell" ReliOn objected "on the grounds that the term 'single failed fuel cell' is not defined, causing the request to be vague, ambiguous and, consequently, overbroad and unduly burdensome. As a result, ReliOn is without sufficient information to admit or deny the Request as presently drafted. On that basis, ReliOn denies the Request." *See* Ex. 1 to 2nd Taylor Decl. (p. 8). Yet, before the USPTO in the reexam ReliOn stated its "contention that the Examiner astutely identified the most novel and unobvious attribute of the applicant's overall fuel cell design, i.e., the ability to 'individually selectively deactivate' a *failed* fuel cell." *See* Ex. 14 to 2nd Taylor Decl. (p. 4) (emphasis added).

### III. ARGUMENT

**A.    This Court should dismiss ReliOn's claims of infringement subject to such conditions as are reasonable and just under the circumstances.**

"A district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Smith v. Lenches* 263 F.3d 972, 975 (9th Cir. 2001). "'Plain legal prejudice may be shown where actual legal rights are threatened or where monetary or other burdens appear to be extreme or unreasonable.' Such prejudice has been found where the proceedings were at such an advanced stage 'so as to prejudice [the] defendant by waste of time and expense in preparation of defense,' and where dismissal of a party would have resulted in the inability to conduct sufficient discovery on the remaining claims. Prejudice may also arise where the party seeking dismissal has been dilatory in seeking dismissal." *Bollinger v. Lilley* 2007 WL 2406786, 1 (D. Nev. 2007) (citations omitted).

Pursuant to Fed. R. Civ. P. 41(a)(2), this Court "may attach conditions to a voluntary dismissal in order to protect the defendant." *Ultimate Image, Inc. v. Pedersen,*

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 14**

2006 WL 3404949, 3 (W.D.Wash. 2006) (citation omitted).    "A district court's decision

as to the terms and conditions that should be imposed, if any, rests within the 'broad

discretion' of the district court. *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th

Cir. 1980); *Pontenberg v. Boston Scientific Corp.*, 252 F .3d 1253, 1255 (11th Cir.

2001)." *Design Trend International Interiors, Ltd. v. Huang*, 2007 WL 2683790, 3

(D.Ariz. 2007).

　　　"It is recognized that 'a voluntary dismissal does not limit the court's power to

impose sanctions against plaintiff under Fed.R.Civ.P. 11 for filing groundless claims.'

*Burnette v. Godshall*, 828 F.Supp. 1439, 1444 (N.D.Cal. 1993) (*citing Cooter & Gell v.

Hartmarx Corp.*, 496 U.S. 384, 395 (1990)). Accordingly, the Court retains jurisdiction

to consider a post-dismissal motion for Rule 11 sanctions." *Ultimate Image, Inc.* 2006

WL 3404949, 2. Likewise, "[d]ismissal with prejudice does not prevent defendants from

seeking attorney's fees under 35 U.S.C. § 285." *Innovative Engineering Solutions, Inc. v.

Misonix, Inc.*, 2007 WL 1306739, 2 (D. Or., 2007).

### 1.　　This Court should either compel ReliOn to provide its claims construction or should enter an order adopting Hydra's.

　　　Although ReliOn seeks dismissal of its patent infringement claims, it continues to

assert that Hydra infringes the '556 Patent. *See* ReliOn's memorandum in support of its

motion to dismiss [# 204] ("ReliOn emphasizes that it is not dismissing its Complaint

because it believes the fuel cells being developed by Defendant Hydra Fuel Cell

Corporation ('Hydra') do not infringe ReliOn's patent); *see also* Declaration of Breton

Bocchieri [# 205] ("Hydra never produced documents, declarations or witnesses under

oath showing that Hydra had, in fact, changed its fuel cell designs to no longer infringe

any claim of the '556 Patent.").

　　　Implicit in ReliOn's motion to dismiss is the threat of future litigation should

Hydra's design change as it begins commercial production. *See* ReliOn's memorandum

in support of its motion to dismiss at p. vii [# 204] ("Plain legal prejudice, however, does

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 15**

not result simply when defendant faces the prospect of a second lawsuit or when plaintiff merely gains some tactical advantage.").

Because ReliOn has refused to explain what it thinks the '556 Patent means,

When it thought it could win this case on the basis of sanctions, and without addressing the merits, ReliOn pursued this litigation with a zeal and vigor uncommon in this Court.  As soon as it realized it was finally going to have to address this case on the merits it tried to "*Super Sack*" its way out of the mess it created.

ReliOn should do what all patent plaintiffs must, tell Hydra what it thinks the '556 Patent means and why it thinks Hydra infringes it. *See Refac Int'l, Ltd. V. Hitach*i, 921 F.2d 1247, 1253 (Fed. Cir. 1990); *citing to and quoting Refac Int'l, Ltd. V. Hitachi, Ltd., No*. CV 87-6191 TJH (Bx), Order at 8 (C.D. Cal. Feb. 22, 1989); *see also* Breton August Bocchieri, Obtaining Attorney Fees in Intellectual Property Cases:  Rule 11 and Other Sanctioning Mechanisms, 33 IDEA 2, 212 (1993) (Stating that the plaintiff in Refac "attempt[ed] to reverse the burden of proof by forcing the defendants to prove non-infringement.").

To permit ReliOn to use this Court as both a sword and a shield would be fundamentally unfair.  Accordingly, this Court should require ReliOn to either provide Hydra with its claims construction (and an updated infringement claims chart) or adopt Hydra's claims construction.

**2.      This Court should enter an Order requiring one electronic copy of all discovery produced in this case to be held in escrow by a court approved local law firm.**

ReliOn chose to produce its patent prosecution attorney's files, rather than provide discovery from its own records. *See* Exs. 20-24 to 2nd Taylor Decl.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 16**

Should ReliOn follow through on its implied threat to sue Hydra again, Hydra would be severely disadvantaged to defend without the aid of the documents produced in this case, Maintaining a set of the documents produced to Hydra in this case is the only way to assure that Hydra can access them in their entirety should ReliOn or a ReliOn successor sue Hydra for alleged patent infringement.

Accordingly, this Court should require one electronic copy of all discovery produced in this case to be held in escrow by a court approved local law firm.

**3.    This Court should enter an Order requiring ReliOn to pay Hydra's reasonable attorney's fees or should condition ReliOn's ability to proceed in any future action upon the payment to Hydra of its reasonable attorney's fees.**

"An award of costs and attorney's fees typically follows a grant of voluntary dismissal but the court is not obligated to do so. *Stevedoring*, 889 F.2d at 921." *Ultimate Image, Inc. v. Pedersen*, 2006 WL 3404949, 3 (W.D.Wash. 2006). Where, as here, there is a likelihood that the defendant will not be freed from the risk of re-litigation, an award of fees is justified. *See Design Trend International Interiors, Ltd. v. Huang 2007* WL 2683790, 4 (D.Ariz., 2007) ("[T]he Huangs have not necessarily 'been freed of the risk of relitigation of the [tort] issues.' *Colombrito*, 764 F.2d at 133. A conditional award of costs and attorney's fees is fair and just 'in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him.' *Id.*").

ReliOn's vigorous efforts to obtain a victory through sanctions, and not on the merits, followed by its almost immediate attempt to "*Super Sack*" its way out of this case as soon as it was required to address the merits, further supports an award of fees under Fed. R. Civ. P. 41(a)(2).[3] *See Furminator, Inc. v. Kim Laube & Co.*, Inc. 2008 WL

---

[3] Hydra is currently evaluating motions under Fed. R. Civ. P. 11 and/or 35 U.S.C. § 285.

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 17**

80691, 3 (E.D.Mo. 2008).  ("IT IS FURTHER ORDERED that if FURminator files a
new action against Kim Laube Company, Inc. claiming infringement of Patent Nos. '846
or '076, FURminator shall pay Laube's reasonable fees and costs incurred in defending
the present action.).

If the Court does not grant attorney fees at this time, it should require ReliOn to
pay Hydra's fees from this case if ReliOn files a new action against Hydra.

**B.    This Court should deny ReliOn's motion to dismiss Hydra's counterclaims
       for non-infringement and invalidity.**

ReliOn brings its motion to dismiss Hydra's counterclaims under the principles set
out in *Super Sack Man. V. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995).  In a
recent decision out of the Federal Circuit, *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495
F.3d 1340, 1345 (Fed. Cir. 2007) the Federal Circuit noted that "[a]lthough neither *Super
Sack* nor *Amana* has been expressly overruled, both applied the disapproved 'reasonable
apprehension of imminent suit' test.  Therefore, although the holdings in both cases are
not necessarily dependent on the 'reasonable apprehension of imminent suit' requirement,
we nevertheless base our analysis of whether jurisdiction currently exists over
Nucleonics's declaratory judgment counterclaims strictly on the framework of
*MedImmune.*"  In *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007), the
United States Supreme Court made clear that "the question in each case is whether the
facts alleged, under all the circumstances, show that there is a substantial controversy,
between the parties having adverse legal interests, of sufficient immediacy and reality to
warrant the issue of a declaratory judgment."

The Federal Circuit in *Sandisk Corp. v. STMicroelectronics NV*, 480 F.3d 1372,
1381 (Fed. Cir. 2007), held that "Article III jurisdiction may be met where the patentee
takes a position that puts the declaratory judgment plaintiff in the position of either
pursuing arguably illegal behavior or abandoning that which he claims a right to do.  We
hold only that where a patentee asserts rights under a patent based on certain identified

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 18**

ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights."

ReliOn's Covenant Not to Sue is limited in scope.  It covers only "past, present or future actions taken by Defendants with respect to the fuel cell products reflected in the documents produced by Hydra during discovery in this action *that were attached to the February 15, 2008 letter from Renee Rothauge to Breton Bocchieri, and reflected in the documents* produced by Hydra during discovery in this action that were *referenced in Paragraph 3 of the Declaration of Benjamin Schafer* In Opposition to Plaintiff's Motion for Extension of Time (Dkt. No. 180)" (emphasis added).  As Ms. Rothauge's February 15, 2008 letter made clear, the documents attached thereto were a representative sample of the documents produced in this case, but were not comprehensive.  *See* Ex. 10 to Taylor Decl.  And, the only documents referenced in ¶ 3 of Mr. Schafer's declaration were Hydra's March 10, 2008, supplemental document production pursuant to this Court's October 22, 2007 Order. [#180].  Hydra has produced significantly more technical and design documents than those referenced in ReliOn's Covenant Not to Sue.

Moreover, ReliOn's Covenant Not to Sue would not preclude suit against a customer or vendor of Hydra.  Most importantly, ReliOn continues to allege that Hydra infringes the '556 Patent, all the while refusing to explain what it thinks the '556 Patent means and why it thinks Hydra's current design infringes the Patent.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 19**

Accordingly, ReliOn has done what the Federal Circuit has said meets the standard for jurisdiction over a declaratory judgment claim, ReliOn has taken "a position that puts the declaratory judgment plaintiff [Hydra] in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *See Sandisk*, 480 F.3d at 1381. Therefore, ReliOn's motion to dismiss Hydra's counterclaims should be denied.

## IV.  CONCLUSION

For the reasons stated herein, this Court should condition ReliOn's dismissal of its Amended Complaint upon:  (1) ReliOn's compliance with this Court's order directing it to provide its claims construction, or entering Hydra's claims construction; (2) requiring that one set of all discovery in this case be held in escrow by a court ordered Oregon attorney; and (3) that ReliOn pay Hydra's attorney's fees for defending this case either now or as a condition for proceeding in any future litigation against Hydra.

This Court should also deny ReliOn's motion to dismiss Hydra's counterclaims for invalidity, non-infringement and unenforceability of the '556 Patent.

DATED this 11th day of April, 2008.

BULLIVANT HOUSER BAILEY PC


BY _____
    **Renée E. Rothauge**
    OSB #903712
    **Laura Caldera Taylor**
    OSB #993786
    Telephone: 503.228.6351
    Attorneys for Defendant Hydra Fuel Cell
    Corporation

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S
MOTION FOR VOLUNTARY DISMISSAL OF COMPLAINT
Page 20**

## CERTIFICATE OF SERVICE

I, Laura Caldera Taylor, certify that on April 11, 2008, I served the foregoing

**HYDRA'S OBJECTION AND OPPOSITION TO RELION'S MOTION FOR**

**VOLUNTARY DISMISSAL OF COMPLAINT PURSUANT TO FED.R.CIV.P. 41(a),**

**AND TO DISMISS COUNTERCLAIMS PURSUANT TO FED.R.CIV.P. 12(b)** on the

attorney(s) of record herein pursuant to L.R. 100.7 via CM/ECF.

> Breton August Bocchieri
> Thomas Douvan
> Nguyen Huu Nguyen
> Thelen Reid & Priest LLP
> 333 S. Hope Street, Suite 2900
> Los Angeles, CA 90071-3048
> e-mail:  bbocchieri@thelenreid.com
>                  tdouvan@thelenreid.com
>                  nnguyen@thelenreid.com
>
> Scott D. Eads
> Perkins Coie LLP
> 1120 NW Couch St., 10th Floor
> Portland, OR 97209-4128
> e-mail:  seads@perkinscoie.com
>
> Jeffrey M. Kilmer
> Kilmer Voorhees & Laurick PC
> 732 NW 19th Ave
> Portland, OR 97209
> e-mail: jkilmer@kilmerlaw.com

BY ___Laura Caldera___

Laura Caldera Taylor, OSB #99378

Attorneys for Defendant

10504560.1

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**CERTIFICATE OF SERVICE
Page 1**