IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RELION, INC., a Washington            )
corporation,                          )
                                      )
            Plaintiff,                )    Case No. CV06-607-HU
                                      )
      vs.                             )        OPINION AND
                                      )           ORDER
                                      )
HYDRA FUEL CELL CORPORATION, a        )
Nevada corporation; and AMERICAN      )
SECURITY RESOURCES CORPORATION, a     )
Nevada corporation,                   )
                                      )
            Defendants.               )
_____)

Scott D. Eads
Perkins Coie
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209

Breton A. Bocchieri
Thomas A. Douvan
Thelen Reid Brown Raysman & Steiner
333 South Hope Street, Suite 2900


1    - OPINION AND ORDER

Los Angeles, California 90071
        Attorneys for plaintiff

Renee E. Rothauge
Laura Caldera Taylor
Bullivant Houser Bailey
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204
        Attorneys for defendant Hydra Fuel Cell Corporation

Jeffrey M. Kilmer
Christopher T. Carson
Kilmer, Voorhees & Laurick
732 N.W. 19th Avenue
Portland, Oregon 97209
        Attorneys for defendant American Security Resources
        Corporation

HUBEL, Magistrate Judge:

        The matters before the court are the request for attorney's

fees by defendant American Security Resources Corporation (ASRC)

(doc. # 269); plaintiff Relion's motion to enforce the stipulated

protective order (doc. # 279) and Relion's motion for return of

sealed documents (doc. # 288).

        1.   Attorney's fee request

        ASRC seeks an attorney's fee award under 35 U.S.C. § 285,

which gives the court discretion to award reasonable attorney's

fees to a prevailing party in patent cases, in "exceptional

circumstances." A case is deemed exceptional when there has been

some material inappropriate conduct related to the matter in

litigation, such as willful infringement, fraud or inequitable

conduct in procuring the patent, misconduct during litigation, or

vexatious or unjustified litigation. Brooks Furniture Mfg. Inc.

2   - OPINION AND ORDER

v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005).
Absent misconduct in conduct of the litigation or in securing the
patent, sanctions may be imposed against the patentee only if
both 1) the litigation is brought in subjective bad faith; and 2)
the litigation is objectively baseless. Id.

The party seeking an award of fees under § 285 must
establish the predicate conduct by clear and convincing evidence.
Forest Laboratories, Inc. v. Abbott Laboratories, 339 F.3d 1324,
1327 (Fed. Cir. 2003).

On September 5, 2008, the court ordered ASRC to submit
documentation stating separately the dollar amount of fees
claimed by each timekeeper listed on the billing statement
attached to the Declaration of Jeffrey Kilmer; the total number
of hours claimed for each timekeeper; and a grand total
representing the total amount of attorney's fees requested by
ASRC in its motion. (Doc. # 274). ASRC has not complied with this
order. ASRC's request for attorney's fees is therefore denied, on
the ground that it has failed to submit adequately detailed
billing records, see, e.g., Fischer v. SJB-P.D., Inc., 214 F.3d
1115, 1121 (9th Cir. 2000); Welch, 480 F.3d at 948 and Dry Creek
Landfill, Inc. v. Waste Solutions Group, CV 04-3029, 2007 WL
710214 (D. Or. March 6, 2007), and on the ground that ASRC has
submitted no evidence from which the court can determine the
prevailing market rate, as opposed to the rate actually billed,

for each timekeeper listed on the billing statement. See, e.g.,
Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 946 (9th Cir.
2006)(Determination of a reasonable hourly rate is "not made by
reference to the rates actually charged the prevailing party");
Mendenhall v. Nat'l Transp. Safety Bd., 213 F.3d 464, 471 (9th
Cir. 2000) and Carson v. Billings Police Dep't, 470 F.3d 889, 892
(9th Cir. 2006)(prevailing market rate, not individual contract
between the applicant attorney and the client, provides the
standard for lodestar calculations). While ASRC states in its
Memorandum that "ASRC's attorney billed it at $350 per hour," and
that this is the rate charged by the 75th percentile of attorneys
with 30 or more years of experience in the Portland metropolitan
area, the billing records submitted by ASRC also show the names
of lawyers Gregory Snook, billing at $350 per hour; Brian Mason,
billing at $100 per hour; Michele Stone, billing at $250 per
hour; and Graham Sweitz, billing at $250 per hour. ASRC has
submitted no documentation from which the court could determine
whether the hourly rate charged by these other attorneys was
consistent with the prevailing market rate.

I conclude further that ASRC has not carried its burden of
establishing that this is an exceptional case and that it is
entitled to attorney's fees in this case by clear and convincing
evidence.

///

4   - OPINION AND ORDER

2.   <u>Motion to enforce stipulated protective order and motion for return of sealed documents</u>

Relion moves the court for an order finding that ASRC intentionally violated Paragraph L.4 of the stipulated protective order between the parties. (Doc. 123). Relion also moves the court to enforce the protective order by compelling ASRC to return to Relion all copies of two e-mails, included in ASRC's request for attorney's fees. Relion claims attorney-client privilege for these e-mails and asserts that they were inadvertently produced.

Attorney-client privilege is strictly construed. <u>Weil v. Investment/Indicators, Research and Management, Inc.</u>, 647 F.2d 18, 24 (9th Cir. 1981). Accordingly, it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject. <u>Weil</u> at 24.

Waiver may be effected by implication, and "inadvertence" of disclosure does not as a matter of law prevent the occurrence of waiver. <u>Id.</u> See also <u>United States v. de la Jara</u>, 973 F.2d 746, 749 (9th Cir. 1992) (privilege may be waived by the voluntary production of otherwise privileged documents).

As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies, and that the privilege has not been waived, rests with the party asserting the

5   - OPINION AND ORDER

privilege. <u>Weil</u>, 647 F.2d at 25. Although in <u>Weil</u>, the court held
that when the privileged communication is voluntarily disclosed
without objection by the asserting party's counsel, absent
surprise or deception by opposing counsel, it may be unnecessary
to look beyond the objective fact of disclosure in ruling on the
question of waiver, <u>id.</u> at n. 13, Rule 502(b) of the Federal
Rules of Evidence, as amended on September 19, 2008, suggests
otherwise. Rule 502(b) provides that an inadvertent disclosure
does not constitute a waiver if the holder of the privilege took
reasonable steps to prevent disclosure and promptly took
reasonable steps to rectify the error. <u>Id.</u> at (b)(1)-(3).
Accordingly, the court will find the privilege preserved if the
privilege holder has made efforts "reasonably designed" to
protect and preserve the privilege; conversely, the court deems
the privilege waived if the privilege holder fails to pursue all
reasonable means of preserving the confidentiality of the
privileged matter. <u>Jara</u>, 973 F.2d at 750 (holding that privilege
holder's failure to do anything to recover privileged document or
protect its confidentiality during the six month interlude
between seizure and introduction into evidence constituted
waiver); <u>Gomez v. Vernon</u>, 255 F.3d 1118, 1131 (9th Cir. 2001).

    Whether the attorney-client privilege has been waived is a
mixed question of fact and law. <u>Jara</u>, 973 F.2d at 749.

    According to the February 19, 2008 declaration of George G.

6   - OPINION AND ORDER

Grigel, an attorney at Wells St. John in Spokane, Washington and patent counsel for Relion, Wells St. John was responsible for preparing Relion's document production to Hydra in early October 2007, which comprised a document inspection at Wells St. John's offices, and subsequent off-site copying by Hydra. Grigel Declaration ¶ 2.

The documents were assembled at Wells St. John. They occupied over 40 feet of shelf space. Id. at ¶ 3. Prior to the arrival of Hydra's counsel, the files were reviewed by attorneys and support staff to remove attorney-client and work product materials. Id. at ¶ 4.

According to the March 14, 2008 Declaration of Laura Caldera Taylor, included in the 40 feet of files produced at Wells St. John was a "re-exam" file less than three inches thick. Taylor Declaration ¶ 11. Ms. Taylor states that when she came across the re-exam file, she immediately asked to speak to Mr. Grigel's paralegal, Ms. Kotzke, and "expressed concern that the re-exam file was inadvertently produced, and asked that the file be removed from the conference room." Id. at ¶ 13. Presumably this was done.

Ms. Taylor and her associates then provided Relion a complete set of all the documents Hydra had selected and copied off-site, and, at its own expense, provided Relion's counsel, Thelen Reid, with electronic, text-searchable copies of the

7   - OPINION AND ORDER

documents Hydra selected in Spokane. Id. at ¶¶ 14, 15.

Ms. Taylor states, and Relion does not dispute, that Relion did not assert that the two e-mails at issue here were subject to attorney-client privilege until February 18, 2008, four months after they were initially produced, and then only in response to a letter from Ms. Taylor's office discussing the two e-mails. Id. at ¶ 17. Mr. Grigel states in his declaration that the February 15, 2008 letter from Hydra's counsel was the first time he knew the e-mails had been produced, and that "Wells St. John did not know of or intend to produce any privileged documents or waive any of their client's rights in same." Grigel Declaration ¶ 7. Mr. Grigel states that upon "subsequent review of our files," he discovered that the e-mails had been "misfiled," and that Wells St. John had not removed the two e-mails before Hydra's inspection. Id. at ¶ 8.

On the basis of this evidence, I conclude that Relion has not carried its burden of disproving waiver. Relion's discovery documents were inspected by attorneys and support staff at Wells St. John before they were produced to Hydra. As the incident involving the re-exam file indicates, there was no surprise or deception on the part of Hydra's counsel. Wells St. John not only had the opportunity to inspect the documents prior to the arrival of Hydra's counsel, it had two additional opportunities to do so after Hydra had reviewed Relion's documents, as Hydra provided

Relion's counsel with both hard copies and electronic, text-searchable copies of the documents Hydra had selected for copying. I conclude that Relion did not pursue all reasonable means of preserving the confidentiality of the documents produced to Hydra, and therefore that the privilege was waived. The fact that Wells St. John did not intend to produce any privileged documents is not dispositive. See Weil, 647 F.2d at 24 (subjective intent of the party asserting the privilege is only one factor to be considered in determining whether waiver should be implied).

ASRC's request for an award of attorney's fees (doc. # 269) is DENIED.

Relion's motion for an order enforcing the stipulated protective order and for an order requiring Hydra to return sealed documents (doc. ## 279, 288) are DENIED.

IT IS SO ORDERED.

DATED this 4th day of December, 2008.

/s/ Dennis James Hubel

Dennis James Hubel
United States Magistrate Judge

9   - OPINION AND ORDER